(No. 12121.—Judgment affirmed.)

THE PEOPLE *ex rel.* J. J. Reinhart *et al.* Appellants, *vs.*
PHILIP HERRIN *et al.* Appellees.

*Opinion filed June 20, 1918—Rehearing denied October 3, 1918.*

1. PUBLIC POLICY—*what is meant by public policy.* Public pol-
icy is that principle of the law which holds that no person can law-
fully do that which is injurious to the public or against the public
good, and contracts and agreements should not be enforced when
contrary to public policy.

2. STIPULATIONS—*stipulations by attorneys will be enforced if
not contrary to public policy.* All stipulations of parties or their
attorneys for the government of their conduct on the trial of a
cause or the conduct of litigation will be enforced by the courts if
not unreasonable or against good morals or sound public policy.

3. SAME—*parties to suit cannot stipulate legal effect of admit-
ted facts.* Parties to a suit cannot stipulate the legal effect of ad-
mitted facts, and courts cannot declare legislative acts unconsti-
tutional on an agreed statement of facts, as a public law is not the
property of any court and cannot be confessed away. (*People* v.
*Spring Lake Drainage District,* 253 Ill. 479, distinguished.)

4. SCHOOLS—*attorneys for a high school cannot, by stipulation,
waive benefit of future legislation.* The attorneys for a board of
education of a high school district organized under the void act
of 1911 cannot make a binding agreement with counsel for petition-
ers in *quo warranto,* who are seeking to oust the board, whereby
the board waives the benefit of future validating legislation, and is
permitted, by continuation of the suit, to collect taxes to pay teach-
ers, attorneys' fees and expenses of the district, as such an agree-
ment is contrary to public policy and void.

5. SAME—*when territory is compact and contiguous.* A high
school district composed of practically fifty sections of land, having
a maximum length of nine miles and a maximum width of seven
miles, will be regarded as compact and contiguous territory though
there are some irregularities in the boundary, so that the territory
is not as compact and contiguous as though all the land in the dis-
trict were in a circle or quadrilateral.

6. Other questions in this case are controlled by the decisions
in *People* v. *Crossley,* 261 Ill. 78, *People* v. *Madison,* 280 id. 96,
and *People* v. *Stitt,* id. 553.

APPEAL from the Circuit Court of Champaign county; the Hon. FRANKLIN H. BOGGS, Judge, presiding.

DOBBINS & DOBBINS, for appellants.

W. G. SPURGIN, (CHARLES C. LEFORGEE, GEORGE W. BLACK, and THOMAS W. SAMUELS, of counsel,) for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a proceeding in which a petition in the nature of *quo warranto* was filed in the circuit court of Champaign county against appellees, as president and members of the board of education of Villa Grove Township High School District No. 231 in Champaign and Douglas counties. After certain pleadings were disposed of, the court entered an order dismissing the petition and refusing to permit the *quo warranto* to be further prosecuted and entered judgment for costs against the relators. From that judgment this appeal was taken.

In December, 1916, the State's attorney of Champaign county, on the relation of seventy-five land owners, obtained leave to file an information in this case charging that said high school board was unlawfully usurping the privileges and franchises of a township high school; alleging further that the district was not composed of compact territory; that it was organized under the act of 1911, which was unconstitutional, and that no valid election had been held electing said board. In January, 1917, appellees filed a motion to vacate the order granting such leave, filing in support of said motion affidavits stating that teachers had been employed for the school year whose salary warrants were being held up and that such teachers had no other ready means of earning a living; that if the district should be disorganized the pupils of high school age therein would be left without available high school facilities and great

284 – 24

disorder would result therefrom; that the township high school tax had already been levied and many obligations incurred in conducting said high school up to that date.

In February, 1917, an agreement or stipulation was entered into between the parties through the attorneys representing them in said proceeding, which stated, in substance, as follows: (1) That the pending motion to set aside the leave to file the information should be continued by agreement; (2) that the district should proceed to collect and receive the taxes levied; (3) that the relators should cooperate in making collection of such taxes; (4) that at the end of the present school year, and when the taxes have been collected and in the hands of the treasurer of the district, the defendants will withdraw their motion to set aside leave to file the information and will plead, in substance, the record of the proceeding for the organization of the district, and will rest the validity of the organization upon that record without pleading *laches,* estoppel or intervention of public interests, and hereby expressly waive the benefit of any new legislation upon this subject that may be hereafter enacted by the General Assembly of this State so far as the same may affect this suit, and in this cause counsel agree that the law is that in such state of the record there could be but one judgment rendered, and that would be that the decision of the Supreme Court holding the act under which the district is organized unconstitutional the organization would be quashed; (5) that in consideration of relators' agreement to pay their taxes, respondents agree that all taxes so collected, after paying the expenses of conducting the school for the pending year and expense of the litigation, shall be refunded *pro rata* to all persons paying such taxes, and further providing for the payment of attorneys' fees as a part of such expenses; (6) that respondents agree to dispose of all physical property of the district for the use of the tax-payers interested in said refund; (7) that the execution of this stipulation does not constitute any

recognition of the *de jure* or *de facto* existence of the district; (8) that the parties to the cause bind themselves to faithfully and fairly carry out on their part all the provisions of the stipulation, but shall not be precluded thereby as against third parties who may interfere; (9) that respondents agree not to attempt any further corporate action, except such as may be necessary to carry into effect this stipulation.

The cause was continued from the January term to the April term, in accordance with said stipulation. At the April term the attorneys who up to that time had represented appellees withdrew, and the attorneys who now represent appellees in this court entered their appearance on appellees' behalf. Thereafter, at said April term, the last named attorneys withdrew the former motion to dismiss the information and filed in its stead a plea answering the petition. Said plea, in substance, stated that the territory involved in the high school district was compact and contiguous (describing it) and that an election had been held according to law, and that the majority of the inhabitants in the district had voted to elect appellees as president and members of said board. It appears, also, that an additional amended plea was filed which set up practically the same facts as the original plea, and in addition pleaded the so-called curative act of 1917 and a compliance with said act. The appellees moved to strike these pleas from the files, presenting in support of the motion the stipulation heretofore referred to. The court denied this motion. To the two pleas filed to the information the relators filed nine replications. These replications involve the questions here argued, and in substance state that the act of 1911, under which the alleged district was organized, was unconstitutional and that the organization of the district was not, therefore, a *de facto* one; that at the time the stipulation was executed none of the relators had paid their taxes, which then amounted to $5000, levied to support the alleged district,

and the collection of said taxes was then about to be attempted to be restrained by proceedings in chancery; that because of the reasons set forth in the stipulation the relators agreed to continue the case and not press the chancery proceedings under the conditions named in the stipulation, and that appellees were bound by the stipulation so filed and could not now plead the validating act. The replications also raised the question that the territory was not compact and contiguous and that the respondents had not been elected as required by law. Appellees demurred to these replications, and thereupon appellants moved to carry the demurrer back to the pleas, insisting that the pleadings showed that the district was not compact, and further showed that no real election had been held in the district to elect said board of education. The trial court overruled the motion to carry the demurrer back to the pleas and sustained the demurrer to the replications, appellants electing to abide by their motion to carry the demurrer back to the pleas. The court thereafter, at the January term, 1918, of said court, entered judgment in favor of the appellees in bar of the action and against the relators for costs.

The principal contention urged by appellants on this appeal is that the stipulation was fairly entered into and its provisions fairly carried out by appellants, and that it would be inequitable and unjust and against the law to hold the stipulation void after appellees had obtained all the advantages thereof, and that the trial court, in effect, held it void in making the rulings heretofore referred to. Generally all stipulations of parties or their attorneys for the government of their conduct on the trial of a cause or the conduct of litigation are enforced by the courts if such stipulations are not unreasonable or against good morals or sound public policy. (20 Ency. of Pl. & Pr. 607.) "Any matter which involves the individual rights of the parties to a cause may properly be made the subject of a stipulation between them, * * * but stipulations involving matters of public in-

terests or which affect the interests of individuals, which cannot be ascertained in advance of the adjudication in the cause, are invalid. Thus, courts will disregard stipulations involving the validity or constitutionality of a statute, * * * and, generally, no valid agreement can be made as to a question of law; nor can a valid agreement or stipulation be entered into to confer jurisdiction." (36 Cyc. 1285, and cases cited.) Beyond question, this stipulation involved matters of public interest. This court has more than once held that the curative act validating the organization of high school districts organized under the act of 1911 is an act of a public nature and was deemed for the best public interest, and that the high school districts attempted to be organized under said act of 1911 should be regarded as valid. (*People* v. *Madison,* 280 Ill. 96; *People* v. *Taylor,* 281 id. 355.) The phrase "public policy," in law, is understood to mean "that principle of the law which holds that no subject can lawfully do that which has a tendency to be injurious to the public or against the public good, which may be termed the policy of the law, or public policy in relation to the administration of the law." (Greenhood on Public Policy, 2.) In *Wakefield* v. *VanTassell,* 202 Ill. 41, this court on page 47 quoted with approval the statement that "public policy is that principle of the law which holds that no subject or citizen can lawfully do that which has a tendency to be injurious to the public or against the public good." · The rule that contracts and agreements, when contrary to public policy, should not be enforced is one of the great preservatives of a State. "Sound morality is the corner stone of the social edifice. Whatever disturbs that is condemned under that fundamental rule." *Stanton* v. *Allen,* 5 Denio, 434.

It is urged in this connection, also, by counsel for appellees, that the stipulation was *ultra vires* on the part of appellees who entered into it; that they had no authority to enter into an agreement or stipulation that validating

legislation as to this high school district should not bind
the courts in disposing of the information in this proceed-
ing. This court said in discussing the organization of a
certain high school district in *People* v. *Vaughan,* 282 Ill.
163, on page 165 : "The parties did not submit to the court
the question of the validity of the act of 1911, but agreed
that the high school district was legally organized unless it
was composed, in whole or in part, of another and prior
township high school district, but the judgment of the court
was based on a finding that the act was unconstitutional.
Parties cannot stipulate what the law is." It is the duty
of the court to determine whether a law is constitutional
or not. Courts cannot declare legislative acts unconstitu-
tional on an agreed statements of facts. (*Chicago and
Grand Trunk Railroad Co.* v. *Wellman,* 143 U. S. 339.)
Neither can they stipulate the legal effect of admitted facts.
(*Swift & Co.* v. *Hocking Valley Railway Co.* 243 U. S.
281.) A public law is not the property of any court and
cannot be confessed away. (*State* v. *Aloe,* 47 L. R. A.
(Mo.) 393. See, also, substantially to the same effect,
*Hutchins* v. *Hanna,* 159 N. W. Rep. (Iowa) 199; *City
Council of Denver* v. *Board of Commissioners,* 33 Colo. 1 ;
*Rousseau* v. *American Yeomen,* 177 Mich. 568.) The par-
ties to this litigation not only stipulated as to the binding
force of the high school legislation, but also as to the col-
lection of taxes, the payment of teachers and the payment
of attorneys' fees out of public moneys. Obviously, under
these authorities and on sound principles of public policy
a stipulation as to these matters was beyond the authority
of the parties to enter into and be bound by. An entirely
different situation arises here with reference to matters that
affect the public interests than would arise under this stipu-
lation if the question involved only private interests between
the litigants. This stipulation involves matters somewhat
analogous or kindred to one involving the prosecution of
parties for the commission of crimes. It has been held that

agreements or stipulations as to the prosecution of crimes, so far as they affect private interests of the individual, are binding, but that they can in no way control the prosecution by the public authorities for violations of the criminal law. So the rule is that any agreement contemplating an escape from justice of any person charged with crime, or the discontinuance of any prosecution of one charged with either a felony or a misdemeanor, or the compounding of a *qui tam* action or proceeding for disbarment of attorneys, is void. (Greenhood on Public Policy, 451, and cases cited in note.) This rule is found in chapter 3 of this author's text book. The discussion in the entire chapter, with citation of authorities, gives many examples that bear on the questions here under discussion. Under the authorities there referred to and under those heretofore cited we think the conclusion necessarily follows that this stipulation, so far as it attempted to bind the parties with reference to the validating law, or with reference to the payment of taxes, or any other matters of public nature, was void and not binding upon any of the parties executing the same.

Counsel for appellants rely strongly upon the reasoning of this court in *People* v. *Spring Lake Drainage District,* 253 Ill. 479, to support their contention that the stipulation was valid and binding on the parties. In that case the attorney representing the State entered into a stipulation with certain drainage authorities involving the right of the drainage district to drain that district in a certain way and also involving the right of the State in certain alleged public navigable waters. It was held that courts would always look with favor upon the enforcement of a stipulation which was clearly entered into for the purpose of settling the litigation, and that the drainage district authorities had the power to make the necessary contracts to carry out the agreement or stipulation at the time it was entered into, and that its validity must be decided as of the date when it was executed; that the subject matter of the contract was

not foreign to the purposes of the district, and that the Attorney General had the power to dismiss the litigation with or without a stipulation, and the stipulation was held binding by this court. We think nothing said in that opinion is contrary to the conclusion here reached. In that case it was obvious that the agreement was made in the interest of all parties concerned and was fairly within the law as to the right of the parties to make it. But it cannot be argued here that it was within the power of the parties to authorize an illegal district to collect taxes contrary to law and pay certain bills out of said taxes and do certain other things without the sanction of law involving public rights and interests. As was said by Chief Justice Shaw with reference to enforcing an agreement that certain litigation should be tried only in certain counties in Massachusetts: "The rules to determine in what courts and counties actions may be brought are fixed upon consideration of general convenience and expediency by general law. To allow them to be changed by the agreement of the parties would disturb the symmetry of the law and interfere with such convenience. * * * The greatest inconvenience would be in requiring courts and juries to apply different rules of law to different cases in the conduct of suits in matters relating merely to the remedy, according to the stipulation of the parties in framing and diversifying their contracts in regard to the remedies." *Nute* v. *Hamilton Mutual Ins. Co.* 6 Gray, 174.

We think the argument of counsel for appellants that appellees were bound because they were usurping the office of members of the board of education and therefore were acting solely in their private interest and not for the public is without merit, for if there is any basis for holding the validating act constitutional with reference to high school districts attempted to be organized under the law of 1911, it must be because the people who were elected members of the board of education under said act of 1911 were act-

ing in a public capacity as members of said board and not merely in a purely private capacity.

Counsel for appellants further argue that the court erred in not holding, on this record, that the district was illegally organized because not composed of contiguous and compact territory, as required by the so-called curative act. The territory included in the district contains practically fifty sections of land. Its greatest length is nine miles and its greatest width seven. While there are some irregularities in the boundaries of the district, so that it is not quadrilateral in form or as compact or contiguous as if all the property in the district were in a circle or quadrilateral, yet under the rulings of this court in *People* v. *Crossley,* 261 Ill. 78, and *People* v. *Swift,* 270 id. 532, there can be no question that the district must be held to be compact and contiguous, as those terms are used in the High School law.

It is also urged by counsel for appellants that it is shown, under the pleadings, there was no legal election held to elect appellees as members of said high school board. The pleas of appellees state that the election was called by the county superintendent upon a proper petition and notice for the organization of the district, and that the subsequent election for members of the board of education was called in accordance with the provisions of the act of 1911. In view of the allegations in the pleas, we think, under the rulings of this court in *People* v. *Madison, supra, People* v. *Woodruff,* 280 Ill. 472, and *People* v. *Stitt,* id. 553, it must be held that this point of appellants as to the election of appellees is not well taken.

We have given the points raised by the appellants the consideration that we deem their importance requires. We find no reversible error in the rulings of the trial court. The judgment of the circuit court will therefore be affirmed.

*Judgment affirmed.*