(No. 20541.—▮▮▮▮▮▮▮▮▮▮▮▮)

THE AMERICAN MUTUAL LIABILITY INSURANCE COMPANY *et al.* Defendants in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(SOPHIA CIEMENGA, Plaintiff in Error.)

*Opinion filed February 18, 1931.*

EUGENE COHEN, for plaintiff in error.

MCKENNA & HARRIS, (JAMES J. MCKENNA, FRANK R. PEREGRINE, and ABRAHAM W. BRUSSELL, of counsel,) for defendants in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This writ of error was allowed by this court on the petition of the widow of Joseph Ciemenga. Petitioner's husband was about thirty-two years of age and was employed by the Phœnix Company, a corporation, which was engaged in the manufacture of furniture in the city of Chicago, and in connection with its business operated a number of machines of various types which were driven by electric power. Ciemenga was working on a glue press in the machine department and received an accidental injury February 7, 1929. He died March 28, 1929, on account of septicemia, alleged to have resulted from the injury. The widow of deceased filed with the Industrial Commission on April 29, 1929, an application for compensation against the employer on account of the death of her husband, and in May, 1929, filed an amended application, making the trustee of the bankrupt estate of the employer and the American Mutual Liability Insurance Company of Boston, which company had written a policy for the employer against liability under the Workmen's Compensation act, additional respondents. A hearing before the arbitrator resulted in an award in favor of the widow, who was also the mother of deceased's two surviving children, one six and the other five years of age, and she was soon to give birth to another child. The award against the employer and the insurance company for the support of the widow and her minor children was for $16 a week from the date of the injury, and if the third child was born alive the award was to be $18 a week thereafter until the total sum of $4550 was paid. The insurance company secured a review of the award by the Industrial Commission, which commission affirmed the award of the arbitrator. Thereafter, by *certiorari* proceedings the case was removed to the circuit court of Cook county, where the award of the commission was reversed and set aside. The widow of the deceased filed a petition for writ of error, and defendants in error answered the petition, relying

largely on the fact that plaintiff in error in her application for the writ had not included in the abstract a copy of the insurance policy upon which she claimed the right to recover from the insurance company. Thereupon plaintiff in error filed a motion for leave to file a supplemental abstract, which was resisted by defendants in error but was allowed by this court. The supplemental abstract sets out the policy in full as well as the several endorsements attached to the policy.

One of the claims of defendants in error is that the proof did not show death to have resulted from an accidental injury to the employee. The deceased, Joseph Ciemenga, on February 7, 1929, while at work on a machine or press gluing furniture together, exclaimed excitedly, "I got sliver in my finger!" A fellow-workman by the name of Kasper, who worked within a few feet of deceased, went to him immediately, examined his hand, saw blood, and after deceased had washed his hand saw the sliver under the finger nail of the first finger of his right hand. This testimony of Kasper is claimed by defendants in error to have been incompetent as not a part of the *res gestæ*. We do not think defendants in error have sustained this contention. Deceased continued to work for his employer until noon on February 14. Notice was given of the injury both to the insurance company and the employer.

The widow of the employee testified she had been married to deceased eight years and had two children, one six and one five years of age, and was expecting another. Her husband had always been in good health except for a chronic diabetes, which did not interfere with his capacity to work or his routine of life. His hands were well. She noticed the first week in February the index finger on her husband's right hand was black and red and there was a splinter under the nail. It was exposed until incised by a doctor, after which the finger was bandaged. She first saw the bandage February 11, when her husband came from

the doctor. He continued to work until noon on the 14th day of February. He went to bed about a week after the bandage was placed on his finger and then remained at home in bed about two weeks, after which he was taken to the Speedway Hospital, in Maywood, Illinois. She last saw him alive on the 26th day of March, when she visited him at the hospital. She further testified he had for about three years previous to his death used insulin by self-administered hypodermic injections two or three times a week, using alcohol to wash the needle and also the place on his body where he injected the needle.

. Dr. Tenczar testified Ciemenga came to his office on February 14, 1929. He had a bandaged finger on his right hand and complained of it being very sore. The doctor removed the bandage. The finger was greatly swollen, discharging pus, with some swelling of the hand and with red lines running up the forearm from the hand. The latter he diagnosed as lymphangitis—a condition of traveling sepsis from the finger through the lymph vessels up the arm. He prescribed treatment of soaking the hand in hot potassium permanganate solution and dressing with wet bandages. He saw the patient again on February 15, 16, 18 and 21. The infection had somewhat abated on February 21 and he referred Ciemenga back to his employer's doctor for further treatment. He saw him again the ninth of March at the patient's home and he was suffering with pain in the left knee joint, which the doctor diagnosed as arthritis and prescribed an external counter-irritant and also codein for his pain. The patient was in bed at the time, complaining of great pain, and he had a temperature. The condition of the finger had apparently healed. There was no evidence of boils, lesions, abscesses, cuts or lacerations on any part of the patient's body.

On the hearing before the arbitrator defendants in error offered no medical testimony but on review they offered five doctors as expert witnesses. All of the doctors agreed

the deceased had died from septicemia. There was some difference between the expert testimony presented by the doctors for defendants in error and the evidence of the two doctors who had seen and treated deceased while he was alive, the doctor who assisted in a post-mortem examination of the body of Ciemenga, the bacteriologist who took and made the blood culture of Ciemenga while he was in the hospital, and another doctor who testified as an expert for the claimant, on review, as to whether Ciemenga died from the effects of streptococci infection or staphylococci infection. It would serve no useful purpose to set out in detail the testimony and the reasons for the opinions which were expressed by the several witnesses. It is sufficient to say there was an abundance of medical proof offered and there was much testimony in scientific terms as to the difference between and the effects of a streptococci infection and a staphylococci infection. The weight of the evidence, we think, decidedly preponderates in favor of claimant's theory that the accidental injury to the finger of deceased was the cause of the original infection which resulted in his death. (*Cockrell* v. *Industrial Com.* 327 Ill. 438.) Proof of the health of the employee prior to the accident and its impairment afterwards tends to show that the impaired condition was due to the injury. There was some suggestion as to the deceased having taken self-administered injections of insulin, but we think the proof clearly shows that was not the origin of the infection which caused his death.

The practice of filing a claim against the employer and the insurance company is authorized by the statute and the previously adjudicated cases. Cahill's Stat. 1929, sec. 28, p. 1295; *Equitable Casualty Underwriters* v. *Industrial Com.* 322 Ill. 462; *Illinois Indemnity Exchange* v. *Industrial Com.* 289 id. 233.

Defendants in error also contend that the insurance policy was canceled on February 4, 1929, before the injury

to the employee occurred. The right of either party to cancel the policy at any time was stated in the contract of insurance, the cancellation not to be effective until after ten days' written notice had been given the other party. By an endorsement dated October 10, 1928, and attached to the policy, it was provided that "any termination of this policy shall not be effective as to the employees of this employer covered thereby until ten days after notice of such termination by cancellation or otherwise has been received by the Industrial Commission of Illinois at its office in Chicago, Illinois." Sue Blonsky, employed by the Industrial Commission in its insurance department for about seven years, testified that the records and files of the commission disclosed that a "notice of termination" of the policy here involved was stamped as having been received by the Industrial Commission on February 16, 1929. It was issued by the insurance company and referred to the policy by number and date. D. E. Brown, employed as office manager of the Phœnix Company, Inc., until it ceased operation on February 25, 1929, testified he had occasion on Saturday morning, February 9, to receive notice of the alleged accident to Joseph Ciemenga at the company's plant and sent him at once to Dr. Showalter, who was the regular physician for the employer. He reported the accident on the 12th of February to the insurance company. He also identified the insurance policy issued by the American Mutual Liability Insurance Company of Boston covering workmen's compensation liability, and testified the policy was placed in the hands of the trustee in bankruptcy on February 25, 1929, and that the word "canceled" was not on the policy at that time. He also stated that he remembered a letter coming to his office some time before February 1 stating the insurance company was going to cancel the policy on February 4, 1929. Defendants in error assert that the policy and the endorsements attached thereto did not protect the dependents of the employee but that the

policy was made for the purpose of protecting only the employee. We do not think this is at all in harmony with the terms of the policy or the law. The policy declared its obligations to be the promises of the insurance company to any injured employee covered thereby, or, in the event of his death, to his dependents, and to such employee or such dependents the company was directly and primarily liable under the obligations and promises of the policy. The policy declared it was made for the benefit of such injured employee or such dependents, and was enforceable against the company by any such employee, or such dependents in his name or on his behalf, at any time and in any manner permitted by law, whether claims or proceedings are brought against the company alone or jointly with the employer. It was written for the protection of the employer company against claims under the Compensation act, and was certainly by specific terms for the benefit of the widow and the children of deceased as well as for himself as an employee. Compensation laws are intended to protect workmen by providing compensation for accidental injuries incident to the employment, and a reasonable construction should be placed upon contracts of insurance written for the benefit of employees.

Another question raised by plaintiff in error is that on *certiorari* proceedings before the circuit court the transcript of the record was not authenticated as required by statute, and the court erred in overruling the motion of plaintiff in error to quash the writ. We do not deem it necessary to decide that question.

On the merits of the case we think the circuit court was wrong in setting aside the award, and its judgment is reversed and the award of the Industrial Commission and arbitrator is confirmed.

*Judgment of circuit court reversed.*
*Award of Industrial Commission confirmed.*