(No. 22262.—

THE PLANO FOUNDRY COMPANY *et al.* Plaintiffs in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(MATHILDA WAECHTER, Defendant in Error.)

*Opinion filed April 21, 1934.*

HENRY KNELLER, and GEORGE W. HUNT, for plaintiffs in error.

ROBERT J. WING, and ARTHUR L. PUKLIN, for defendant in error.

Mr. JUSTICE HERRICK delivered the opinion of the court:

Mathilda Waechter, (hereinafter called the petitioner,) widow of Louis Waechter, filed with the Industrial Commission an application for compensation under the Workmen's Compensation act against her husband's employer, the Plano Foundry Company, (hereinafter called the company,) on account of the death of her husband. She later filed an amended claim making the American Mutual Liability Insurance Company of Boston (hereinafter called the insurance company) an additional respondent. The arbitrator found that the death of the deceased was not caused by an accidental injury. On review the Industrial Commission heard additional evidence, set aside the findings of the arbitrator, found that on May 4, 1931, the deceased sustained an accidental injury which arose out of and in the course of his employment, and that as a result of such injury he died on July 17, 1931. The Industrial Commission found that $24.84 had been paid on account of the injuries and awarded the widow $3750 as compensation. The circuit court of Kendall county, upon the return to the writ of *certiorari,* confirmed the decision of the Industrial Commission. Upon the petition of the employer and the insurance company this court granted a writ of error.

The contentions of the plaintiffs in error are: (1) That the circuit court erred in confirming the decision of the Industrial Commission against the insurance company; (2) that the circuit court erred in refusing to set aside the decision of the commission and remand the cause for the purpose of permitting an oral argument; (3) that the court erred in considering the transcript of evidence on

review for the reason that the same was not authenticated in compliance with the statute; (4) that the court erred in refusing to set aside the decision of the commission and to remand the cause because of alleged errors committed by the commission in its ruling on the admission of material evidence and the improper restriction of the right of cross-examination; and (5) that there was no causal relation between the death of the deceased and the accidental injury sustained on May 4.

It is claimed by the insurance company that there is no evidence in the record that it was the insurer of the employer. Under the statute the beneficiary under the Workmen's Compensation act may join both the employer and the insurance company in a proceeding brought to recover compensation under such act. (*American Liability Ins. Co.* v. *Industrial Com.* 342 Ill. 605.) After the filing of the amendment to the application for the adjustment of the claim, the foundry company and the insurance company on April 15, 1932, filed with the Industrial Commission a memorandum giving the names and addresses of the two companies as the parties respondent for the service of notice in the cause. On April 21, 1932, the petitioner and both respondents appeared by their attorneys before the arbitrator and then and there a stipulation was made between the petitioner, the foundry company and the insurance company, which stipulation expressly stated that the American Mutual Liability Insurance Company of Boston was one of the respondents and a party to the stipulation. It was further stipulated, amongst other things, that notice of the accident and claim for compensation were made within the time required under the Workmen's Compensation act, the amount of the earnings of the deceased for the year immediately prior to his death, the amount paid the deceased in his lifetime as compensation for the injury sustained by him on May 4, and that the questions in dispute were (1) whether the death of Waechter on

July 17, 1931, resulted from an accident on the 4th of May, 1931; (2) whether the deceased at the time of the injury had any children under the age of 16 years, and (3) the question of dependency. Both respondents and the petitioner on that same day further stipulated the procedure in the event a petition to review the decision of the arbitrator was had. On the hearing there was offered in evidence by the petitioner the written report, under date of June 2, 1931, of the accident in which the deceased was injured, signed, "A. M. L. I. Co." This report had been filed with the Industrial Commission. Section 26 of the Workmen's Compensation act provides that all policies of insurance carriers insuring payment of compensation under the act shall cover all the employees and the entire compensation liability of the insured, and that any provision of the policy attempting to limit or modify in any way the liability of the insurance carrier shall be wholly void. Section 28 provides that the carrier may be made a party to the proceeding, and that in the event the employer does not pay the compensation the insurance company shall become primarily liable to pay the award. Any matter which involves the individual rights of parties to a cause may properly be made the subject of a stipulation between them. Such stipulation is conclusive and binding upon the parties and will be enforced by the courts so long as such stipulation is not unreasonable or against good morals or sound public policy. (*People* v. *Herrin,* 284 Ill. 368, *City of Chicago* v. *English,* 180 id. 476, and *City of Chicago* v. *Drexel,* 141 id. 89.) The stipulation made was not unreasonable nor was it against good morals or sound public policy, and the parties are concluded by it.

The insurance company did not, either before the arbitrator or the commission, raise any question as to its liability as insurance carrier in the event that an award was allowed. The legal effect of its stipulation was that it would be bound by any award that was made. If it

intended to deny liability as an insurance carrier, good faith required that it apprise the arbitrator or the Industrial Commission of that fact. If it intended to make an issue as to it's liability as an insurance carrier the petitioner should have been advised of that fact on the hearing either before the arbitrator or the commission. It was to the interest of the insurance company at the earliest opportunity to disprove that it was the insurance carrier, and its failure to attempt to make proof of that fact strengthens the probative force of the evidence tending to prove it. (23 Corpus Juris, 1791.) The plain rules of justice required notice to be given, so that the petitioner might have an opportunity to offer full evidence upon the subject of the insurance after being informed of the denial that the insurance company was the insurance carrier. It is too late to raise the question even in the circuit court, because that court tries the case upon the record alone and has no authority to try the case *de novo* or to hear evidence. (*American Milling Co.* v. *Industrial Board*, 279 Ill. 560; *Victor Chemical Works* v. *Industrial Board*, 274 id. 11.) Since the insurance company gave notice of the accident to the commission and stipulated as an insurance carrier in the cause, the Industrial Commission was fully warranted in deciding that if the employer was liable the insurance carrier was likewise liable. *Swift & Co.* v. *Industrial Com.* 287 Ill. 564; *American Milling Co.* v. *Industrial Board, supra; Victor Chemical Works* v. *Industrial Board, supra; Peoria Terminal Co.* v. *Industrial Board*, 279 Ill. 352.

The plaintiffs in error urge that they were not permitted to argue the case orally before the Industrial Commission. The cause was originally set for hearing before the commission on October 28, 1932. By paragraph (*e*) of section 19 of the Workmen's Compensation statute it is required that either of the parties desiring to argue the cause before the commission must file with the commission notice of oral argument at least five days before the date

of the hearing. The commission gave notice of the hearing on October 17 but the request for oral argument was not filed with the commission until October 31, three days after the date of the hearing. The record shows that there was a hearing on October 28 and a subsequent hearing on November 7. On November 19 the Industrial Commission decided the cause. On November 26 the respondents filed their motion to vacate the commission's decision and to permit oral argument. Pursuant to that motion the commission set the case for hearing on oral argument on December 7 and so notified both the petitioner and the respondents. This gave the respondents full and ample opportunity to appear before the commission on December 7 and argue the case at length. However, the record shows that on December 5 the respondents filed with the commission a formal withdrawal of the motion to vacate the decision and to permit oral argument. If they felt that they had been aggrieved by not having an opportunity to argue the cause orally before the commission, then it was their duty to raise the question before the circuit court and move the court to remand the cause to the commission for the purpose of oral argument. This they did not do. At most this was merely a question of procedure, and it was the duty of the respondents to raise such question at the earliest opportunity, otherwise the right is deemed waived. (*Derong* v. *Industrial Com.* 244 N. W. (Wis.) 591.) Having been given the opportunity to argue the cause orally before the commission and having failed to avail themselves of such opportunity but having formally withdrawn their motion to argue the cause orally, the respondents are in no position in this court to claim there was any error on the part of the commission in denying them an oral argument before that body.

It is urged by the respondents that the trial court erred in considering the transcript of evidence on review for the reason that the transcript was not authenticated in compli-

ance with the statute. In this respect the record shows that one of the attorneys for the petitioner authenticated the transcript, but no authentication appears by either of the attorneys for the respondents. The correctness and completeness of the transcript are certified by the secretary of the Industrial Commission. It will be remembered that the respondents were those who were seeking to have the award made by the Industrial Commission reviewed by the circuit court. Paragraph (*e*) of section 19, *supra,* which provides for a correct transcript of the evidence of the proceedings before the commission being filed in the circuit court where the review is sought, relates to the procedure by which the circuit court reviews the issues. Paragraph (*f*) *1* of section 19 provides it shall be the duty of the commission to prepare a true and correct typewritten copy of the testimony and a true and correct copy of all matters contained in such record, certified to by the secretary of the commission. The purpose of the act is obviously to have a correct transcript presented to the circuit court reviewing the case, so that court may have before it all the evidence and the proceedings had before the Industrial Commission. It is clearly the duty of the party desiring to have the case reviewed, to see that a complete record relating to any issues raised is filed by the commission upon the return to the writ of *certiorari.* (*Bloomington, Decatur and Champaign Railroad Co.* v. *Industrial Board,* 276 Ill. 120.) The respondents went to trial before the circuit court without raising the question of the authenticity or sufficiency of the record. The lack of approval of the record was their own act. They are now precluded from taking advantage of any defects in a record which it was their duty to see was properly returned to the circuit court. This court will not permit them to benefit by their own oversight.

The respondents offered in evidence the certificate of death signed by Dr. Groner. Objection made by the peti-

tioner was sustained and the certificate was not permitted to be put in evidence. Dr. Groner was the coroner and not the attending physician. No autopsy was performed. It is obvious that his certificate was based upon the proceedings of the coroner's inquest. It is said that this certificate was competent evidence under the provisions of the Health act. (Cahill's Stat. 1933, p. 1530; Smith's Stat. 1933, p. 2209.) The doctor's statement as to the cause of death was mere hearsay, based upon an *ex parte* proceeding, in which the coroner's verdict was not competent as evidence in this proceeding. (*Cameron, Joyce & Co.* v. *Industrial Com.* 324 Ill. 497; *Spiegel's House Furnishing Co.* v. *Industrial Com.* 288 id. 422.) We are not deciding that a death certificate made by an attending physician may not under some circumstances be competent evidence in some classes of cases, but in the case at bar it was not error to refuse in evidence the death certificate.

We have considered all of the issues made by the respondents with reference to other rulings upon the admission of evidence claimed to be incompetent and the sustaining of objections to questions asked on cross-examination of witnesses for the petitioner. We are satisfied that no prejudicial error was committed against the respondents by any such rulings.

We now approach the decision of this case upon its merits. It is the contention of the respondents that the deceased died of angina pectoris or from a coronary thrombosis, while on the part of the petitioner it is contended that the cause of death was sub-acute streptococcus or bacterial endocarditis, the infection causing the death being the same streptococcic infection from which the deceased suffered as a result of an accident. On May 4, 1931, the deceased, while at work in the company's foundry, sustained a laceration on the back of the third finger of his left hand. On the next day he was by a representative of the company sent for medical attention and treatment to

the company's physician, Dr. Arthur E. Lord. On the hearing the company's physician was called as a witness by the petitioner. He testified that on May 5 he examined the deceased and found that he had an injury; that the wound was then infected; that the infection extended up the arm, the arm showing narrow red streaks reaching nearly to the elbow, indicating a lymphatic infection in the lymph channels leading from the wound. The infection was a streptococcic infection. There was some swelling, thickening of the hand, discharge of pus from the wound and tenderness in the armpit. The wound was opened by the physician on that day. He dressed the injury and caused the patient to return again the same day for treatment. On this day the employee had a temperature of 101 degrees. Dr. Lord examined the patient's heart by means of a stethoscope. There was no heart murmur. The heart was in normal condition except that the pulse rate was higher by reason of the fever, but the rate was approximately normal for the fever and infection found. The physician continued to attend the patient twice daily up to May 15. The first three or four days the patient was confined to his home. During that time there was a considerable amount of swelling and pain in the hand and arm and a marked increase of the pus discharge. His temperature dropped about the fourth or fifth day. From May 15 to May 24 Dr. Lord treated the patient once a day. He again saw him on May 28 but never after that. He testified that on May 28 the hand was not entirely healed, and that it had a dry dressing on it and there was still some stiffness. On May 5 the employee weighed 175 or 180 pounds. In Dr. Lord's opinion during the period that he attended him the employee had lost from 10 to 15 pounds in weight. On May 5 there was no complaint to Dr. Lord by the patient of pains in his chest or shortness of breath and no cyanosis of the face. The employee returned to work on May 25. The superintendent of the

company instructed the foreman to see that the employee had light work to perform. He did, however, work one hour each day in the foundry room, where the work was rather strenuous. He continued to work until the 17th of July.

There is a conflict in the evidence on several material issues, but there is no evidence that the deceased ever had any disease of or impairment of the heart before May 4, 1931. On the part of the petitioner the evidence tended to prove that at the time of his death the deceased was fifty-four years old, had not been sick for ten years immediately preceding the day he was injured, had never had any heart trouble, and was a very active, athletic type of man. After his day's work at the foundry he habitually did physical work. He took care of his yard, shrubbery and trees, raised chickens and in season maintained a large garden, in which he did the manual labor necessary to its success. He would frequently work until bed-time about his premises and on occasions all day on Sunday. He maintained a summer cottage on the river, and in the spring of 1931 he personally painted that cottage and personally installed a septic tank therein. Prior to the injury he had no swelling of the arms or hands. He continued to lose weight after May 25 and at the time of his death had lost about thirty pounds. After May 28 there was a breaking out on his left arm, below the elbow. Slightly raised spots appeared in clusters of four or five on the wrists, elbows, arms and ankles. He became short of breath. His facial expression was that of one in pain. His face was pale and pallid but with a spotted, "pinkish" appearance, caused by irregular clusters of slightly raised spots along the veins. Later the complexion became sallow but with the pink spots present. These spots became more vivid while he was performing physical work. He appeared weak, had no energy and was despondent. A lump, accompanied with red streaks, appeared on his left arm.

About three weeks before his death the lump came to a head and broke and there was a discharge of pus therefrom. This discharge persisted until his death. This sore was dressed and treated with medicines by his wife. A lump also appeared under his left armpit. Men who actually worked with him in the foundry after his return to work testified to his weakened condition, his dizziness when he stooped and his steadying himself by taking hold of fixed objects in the room, the apparent weakening effect of his work upon him, and the holding of his hand to his chest as though in pain. He lost his appetite and began the use of aspirin. He had never used aspirin prior to the injury but now took it frequently while in pain. On July 17 he returned from his work about 4:00 P. M. He retired about 9:15. His wife shortly thereafter followed him upstairs. He complained to her of a pain in his chest. He stated he would go down-stairs and get a couple of aspirins. He did go, returned up-stairs and started to put on his trousers, remarking that he would sit down-stairs in a chair, then suddenly began to moan, and died.

On the part of the respondents there was the evidence of witnesses that the deceased performed his work normally in the foundry, and that after May 25 they noticed no change in his physical condition or appearance. This evidence was mostly negative rather than positive. The witnesses who testified to the changes in the man were those in a position to see and know the things about which they testified, and we see no reason for discrediting their testimony.

In addition to Dr. Lord the petitioner offered the testimony of six members of the medical profession. Dr. Lord stated he had no opinion as to the cause of death. The respondents offered the testimony of four medical witnesses in addition to Dr. Swift, who was in the employ of the insurance company and who testified for the respondents. He expressed no opinion as to the cause of death. The six

medical witnesses for the petitioner, in response to hypo-
thetical questions, testified in substance that as a matter of
reasonable medical certainty death was caused by endo-
carditis, by sub-acute bacterial endocarditis, by sub-acute
streptococcic endocarditis. They all testified that there was
a direct causal connection between the original streptococ-
cic infection and the death of the employee. These phy-
sicians were cross-examined at great length on the subject
that the man worked from May 25 to July 17. One of
the physicians testified that he had personally attended a
case of sub-acute endocarditis where the patient worked
until the moment of malignancy began and then died. Dr.
Andrews testified that he had seen patients suffering from
sub-acute streptococcic endocarditis go from twelve to fif-
teen weeks with such infection present. The physicians
testified in substance that in streptococcic infection there
may be latent periods—*i. e.,* periods of remissions in the
patient suffering from the infection—in which the infec-
tion advances and then retreats and sometimes remains
quiescent over a period of time.

The four physicians testifying for the respondents on
the cause of death, in response to hypothetical questions,
stated, as a matter of reasonable medical certainty, that
death was caused by angina pectoris, coronary thrombosis
or some coronary disease, and that there was no direct
causal connection between the streptococcic infection and
death.

The issue is whether the death was due to a patho-
logical cause existing in the employee or was due to the
infection occasioned by the traumatic injury of May 4.
We are of the opinion that there is competent evidence in
the record showing that immediately following the injury
on May 4 there was a distinct pathological change in the
deceased, with progressive ravages upon him until the day
he died. Proof of the state of the health of the employee
prior to and down to the time of the injury, and the change

immediately following the injury and continuing thereafter, is competent as tending to establish that the impaired condition was due to the injury. (*American Liability Ins. Co.* v. *Industrial Com. supra.*) Where an injury has a characteristic result the result is an objective symptom. *Powers Storage Co.* v. *Industrial Com.* 340 Ill. 498.

It is often impossible to prove the cause of death by positive and direct evidence. In that situation, as in any other type of case embracing personal injuries, the existence of a material controverted fact may be established, either by a preponderance of the evidence or beyond a reasonable doubt, by proof of such facts and circumstances as lead to the reasonable inference of the truth of the material controverted facts. (*Wasson Coal Co.* v. *Industrial Com.* 296 Ill. 217.) Liability cannot be determined by a choice between two views equally compatible with the testimony, but in order to justify a recovery the evidence must show a causal connection between the injury sustained in the course of employment and the ensuing death. Yet this does not mean that where there is a conflict as to the cause of death there can be no recovery. Where it is possible that death may have resulted from two causes, one of which is not shown to have actually existed while in the other there is positive proof of a direct causal connection between the injury and death, an award should be granted. (*Cockrell* v. *Industrial Com.* 327 Ill. 438.) The rule of law is that it is the province of the Industrial Commission to draw reasonable inferences from facts and circumstances in evidence, and its findings upon a contested issue of fact will not be set aside by this court unless such finding is manifestly against the weight of the evidence. (*Northwestern Barb Wire Co.* v. *Industrial Com.* 353 Ill. 371; *Old Ben Coal Corp.* v. *Industrial Com.* 351 id. 572; *Armour Grain Co.* v. *Industrial Com.* 323 id. 80.) In this class of cases it is not within the sphere of this court to weigh conflicting evidence and override the findings of

the Industrial Commission unless the court can say that such finding is manifestly against the weight of the testimony or is based upon incompetent evidence. (*Cockrell* v. *Industrial Com. supra; Armour Grain Co.* v. *Industrial Com. supra.*) Here the cause of death was a scientific question, upon which it was proper to receive the evidence of medical experts. We are of the opinion that there is sufficient competent evidence in the record to sustain the finding of the Industrial Commission, and such finding will not be disturbed.

The judgment of the circuit court of Kendall county is affirmed.

*Judgment affirmed.*