(No. 4180-)

ETNA HEDRICK, ADMX., ET AL, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed October 13, 1950.*

LIVINGSTON, MURPHY AND BARGER, Attorneys for Claimant.

IVAN A. ELLIOTT, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

SCHUMAN, C. J.

Decedent, Jesse J. Hedrick, was employed by the Division of Highways on December 21, 1941 as a common laborer, and his earnings in the year preceding his injuries totaled $2,009.79.

On May 13, 1946, decedent was building a fire at a building leased by the Division of Highways at 1315½ South Madison, Normal, McLean County, Illinois. In so doing, he used a 5 gallon can of what was presumed to be kerosene, and after he had made the fire he reached for the 5 gallon can to replace it in its proper location. As he reached for the can, it exploded throwing flaming oil over his body. He was taken to the Brokaw Hospital in Normal, and was treated by Dr. George W. Stevenson.

Following the injuries on May 13, 1946, the Division of Highways paid Mr. Hedrick full salary from May 14, 1946 to June 10, 1946, inclusive. Beginning June 11, 1946, Mr. Hedrick was paid compensation at the rate of $18.00 per week to and including August 4, 1947. Payments for total temporary disability total $1,235.41, and were terminated on August 4, 1947, the date which marked the end of the 64 weeks' period provided for in the Workmen's Compensation Act.

All of the medical and hospital expenses were paid by respondent.

Mr. Hedrick died on April 9, 1948, and at the time of his death he lived and resided with Etna Hedrick, his wife, whom the evidence shows was totally dependent upon him for her support, and at the time of the hearing she had not remarried.

The claim is predicated on the theory that the death of Jesse J. Hedrick was the result of the injuries that he received on the 13th day of May, 1946. Claimant contended that the only question to be determined by the

Court is whether the accidental injuries sustained by Mr. Hedrick on May 13, 1946 caused or contributed to his death. The claimant contends that said accidental injuries caused or contributed to Mr. Hedrick's death, and, by reason thereof, his widow is entitled to compensation under the Workmen's Compensation Act.

The respondent contends that the injured employee did not die within one year from the date of his injury, and that no award can be made for his death under the Workmen's Compensation Act. The respondent seems to predicate its entire defense on this theory, and does not contend that the cause of death was not the result of the injuries sustained by Jesse J. Hedrick on May 13, 1946.

From a consideration of the testimony in the record, it can also be considered that the question of causation of death is also before the Court. On the point of cause of death there seems to be a conflict in the testimony, if the medical testimony in the record can be considered as competent testimony—the respondent contending that the death was due to a heart attack in no way related to the injuries sustained May 13, 1946.

The first question for the Court to consider is whether or not the claim is barred under Section 24 of the Compensation Act (Illinois Revised Statutes, 1937, Chapter 48, paragraph 161, as amended in 1939). Said Section, insofar as the same is pertinent in this case, reads as follows:

"Provided, that in any case, unless application for compensation is filed with the Industrial Commission within one year after the date of the accident, where no compensation has been paid, or within one year after the date of the last payment of compensation, where any has been paid, the right to file such application shall be barred; Provided, further, that if the accidental injury results in death within said year, application for compensation for death may be filed with the Industrial Commission within one year after the date of death, but not thereafter."

The decedent sustained accidental injuries on May 13, 1946, and on April 9, 1948 he died. If, as contended by the respondent, death would have to occur within one year from the date of the injuries, there is no question that the claim is barred. In support of its contention respondent cites the case of *Hilberg* v. *Ind. Com.*, 380, Ill. 102. In that case, Charles Hilberg sustained an injury on April 27, 1937. On January 27, 1938, a lump sum settlement was agreed upon, which said lump sum was paid February 2, 1938. Mr. Hilberg died October 26, 1939, and it was claimed the death resulted from the accidental injuries he received on April 27, 1937. On November 4, 1939, the widow of the deceased filed her application for compensation on account of the death of her husband. The application was dismissed, and was confirmed by the Industrial Commission in the Circuit Court of Cook County. The Court in affirming the decision of the Circuit court held on page 105:

"The amendment of Section 24 was obviously for the purpose of making a specific time beyond which an employer would not be liable for death resulting from an accident, arising out of or in the course of employment. It required the death to occur within one year. It also protected the right of the dependents by providing they should have one year after the death within which to apply for compensation. The law was thus made certain instead of being uncertain, as it was before the amendment, in that under the construction given the former statute the death might occur more than a year after the accidental injury; and thus an employer, complying with all of the provisions of the law, would never have any certainty that the case was fully determined."

In the same opinion the Court said on page 104:

"The limitation of the Act with respect to applying for compensation for accidental death was made more specific by the amendment of 1939. The provision 'if the accidental injury results in death within said year' obviously refers to the year within which application for accidental injury may be made. It then further provides that if the death results within said year application may be made within one year after death. With this interpretation the legislative intent appears twofold,—first, that death from an accidental injury must occur within the year in which application must be made for compen-

sation by the injured employee; and second, if death did occur within such time claim for compensation for such death might be filed within a year thereafter. It is possible under this law that claim for death compensation might be filed within two years after the date of the accident, because the injured man might live almost a year, and the Act gives his dependent a year after his death in which to make such claim. This intention is made more specific by the last words of the amendment, in which it is said the application may be made 'within one year after the date of death, but not thereafter'."

It appears that in the Hilberg Case, supra, there was no question that the claim was filed more than a year after the last payment of compensation. The lump sum was paid February 2, 1938, and the party died October 26, 1939, which was more than one year after the last payment of compensation.

The respondent also cites the case of *Corn Belt Motor Company* v. *Ind. Com.*, 389, Ill. 320 as sustaining its view that the Hilberg case held that the death of the employee must occur within one year from the date the accidental injuries were sustained. A reading of this case will show that it was not pertinent to the decision, and was more or less a conclusion drawn from the Hilberg case.

In the instant case, Jesse J. Hedrick was injured on May 13, 1946, and was paid compensation up to and including August 4, 1947. Jesse J. Hedrick died on April 9, 1948, which would be less than one year after the payment of the last compensation. The claim of his widow, Etna Hedrick, was filed March 23, 1949, which would be less than one year after the date of death of her husband, Jesse J. Hedrick.

In the Hilberg case, supra, the Court held: "The provision 'if the accidental injury results in death within said year' obviously refers to the year within which application for accidental injury may be made." There is no question that if Jesse J. Hedrick had lived he could have prosecuted his claim for compensation within one

year after the date of the last payment of compensation to him, which was on August 4, 1947, or in other words he could have filed a claim up to and including August 4, 1948.

Section 24, of the Compensation Act, supra, as the Court held in the Hilberg case, supra, that the legislative intent in enacting said section was twofold,—first, that death from an accidental injury must occur within the year in which application must be made for compensation by the injured employee; and second, if death did occur within such time claim for compensation for such death might be filed within a year thereafter. The Court draws the conclusion in this case that the true intent of the interpretation of such statute in the Hilberg case was that where the death occurred within one year after the last payment of compensation that the widow would have one year from the date of such death to file her application for compensation under said Act. The Court therefore concludes that the claim was filed in time, and will proceed to discuss the other points involved in said case.

There is no dispute in the testimony, or in the contentions of the parties, that Jesse J. Hedrick was permanently disabled from the date of his injuries on May 13, 1946 to the date of his death. The only question submitted by the record is whether or not the cause of death could be traced to the accidental injuries sustained on May 13, 1946. As far as the record discloses Jesse J. Hedrick was in good health, an able-bodied man, capable of performing the necessary labor to support his children, now adults, and his wife.

The medical testimony, as far as the record discloses, consisted of medical reports submitted by the following: Dr. George W. Stevenson, which appeared in the De-

partmental Report, and is his testimony taken on the hearing of this cause on November 14, 1949; Dr. Frank McDowell, a specialist in plastic surgery, and an instructor at Washington University, St. Louis, Missouri, which appears in the Departmental Report; Dr. B. Markowitz which appears in the Departmental Report, and in the testimony taken before the Commissioner on November 14, 1949; Dr. A. Edward Livingston of Bloomington, Illinois, which appears in the Departmental Report; Dr. W. E. Scott of Lexington, Illinois, which appears in the Departmental Report; Dr. J. Albert Ludin, a specialist in mental and nervous diseases, which appears in the Departmental Report.

The medical reports of Dr. Stevenson were all pertaining to the treatment for the injuries sustained on May 13, 1946 in regards to the burns that Jesse J. Hedrick had received. This is also true of the reports of Dr. Frank McDowell.

Dr. Markowitz in his reports to the Department stated that he first saw Jesse Hedrick on January 12, 1948, and learned that Mr. Hedrick had developed an acute respiratory infection, that his main complaint was chest pain, and his final diagnosis was that Jesse Hedrick had right sided adhesive pleuritis. In his report on March 9, 1948, in addition to the diagnosis previously mentioned, he stated that in his opinion the patient was highly nervous, and because of the treatment he received over a long period of time he presented a case of psychogenic origin, and suggested that he be sent to St. Louis for further investigation.

Dr. A. Edward Livingston, in a report to the Department dated April 9, 1948, stated that he was called in consultation by Dr. Markowitz on February 29, 1948, and that his diagnosis at that time was an inter-lobar

pleurisy, which evidently had nothing to do with any accident or injury.

Dr. W. E. Scott in his report stated that he was called to see the patient primarily for the relief of pain in his right chest wall and weakness.

Dr. J. Albert Ludin in his report to the Department, dated March 31, 1948, made the following diagnosis:

"Traumatic psychosis, involutional depression."

Jesse J. Hedrick saw fit to secure the services of Dr. Emil Z. Levitin in Peoria, Illinois of his own accord.

The facts showed that Jesse J. Hedrick suffered a heart attack while in the hospital in Peoria, Illinois, and that the heart attack had caused his death on April 9, 1948. This was reported by Dr. Levitin to the Department.

On the trial of the case, Etna Hedrick testified that prior to his injuries he was an able-bodied man, and never missed a day working; that he had always supported his wife and children, and that after he was hurt he was a helpless invalid until the date of his death.

Dr. Markowitz testified that he began treating Jesse J. Hedrick on January 16, 1948, that he complained of a pain in the right shoulder, and case history of having had severe body burns about 22 months prior to that time; that he had been hospitalized for 14 months following his injury. That during the examination Mr. Hedrick was tense, nervous and complained bitterly of pain in the right shoulder, and shortness of breath, and that he had residual scars from his burning, and a right pleuritis. That the last time he saw him was on April 6, 1948, when he sent him to the Methodist Episcopal Hospital in Peoria, Illinois under the services of Dr. Levitin. He further testified that during the entire time he had Mr. Hedrick under treatment that he noted a psychic

element; that decedent was deteriorating very rapidly, and at the time he was referred to Dr. Levitin on April 6, 1948 he was in a condition of premature senility; that by that he meant that all of his arteries, particularly those of the brain, were aging faster than is normally expected for his age. That Dr. Levitin's report corroborated his findings definitely that a psychosis was connected with his injuries.

That Dr. Levitin gave him a report that the cause of death was coronary thrombosis, but that he felt that he had a generalized hardening of the arteries, particularly those of the brain, and involving all the arteries of the body, in which the heart would be included, and that he died of premature senility. That in his opinion the injuries that he received accelerated the deteriorating process and that Hedrick would have lived a longer period of time had he not received the injuries. That in his opinion the burns Mr. Hedrick received were a contributory cause of death, and that he felt that the burns and subsequent suffering caused his general arterial degeneration, which resulted in his death, and concluded that Mr. Hedrick had traumatic psychosis.

It was conceded by all of the doctors that the only definite diagnosis of a coronary thrombosis would be by a post-mortem, which was not performed.

An X-Ray report, made by the Methodist Episcopal Hospital in Peoria and signed by the radiologist of the Hospital, appears in the record with a reading as follows:

"Neurosis is negative for definite changes. Slight osleoporosis of the sella, and sclerosis of the para-sellar vessels."

Dr. George W. Stevenson testified that he first treated Jesse Hedrick on the 13th day of May, 1946 for the burns that he had received, as previously set out.

That he did not treat Hedrick subsequent to July of 1947; that in his opinion the injuries would have no connection with the cause of death of coronary thrombosis. That he did not know of his own knowledge that Mr. Hedrick had died of coronary thrombosis, but only the report that he had received. That it would be conceivable that Hedrick had a general decline over a period of time, that the burns, shock and long period of recovery would hasten a general loss of strength and well being, and that the condition probably caused his death to occur earlier than if he had not suffered said injuries and shock. That even though he had deteriorated, both mentally and physically, as a result of being injured, Mr. Hedrick could have suffered from some other disease, which might have caused his death, and not be connected with the injury.

There is no testimony in the record, outside of comments by Dr. Markowitz, Dr. Stevenson or Dr. Levitin, the last doctor to attend decedent and who described the cause of death as a heart attack. Dr. Markowitz, in his testimony, stated that in his opinion, although he was not attending him at the time, that Mr. Hedrick did not die of a heart attack, but his death was caused by general hardening of the arteries due to premature senility.

The only conclusion that the Court could reach in this case from the examination of the testimony, and the other pertinent facts, is that Jesse J. Hedrick on May 13, 1946 received serious and permanent injuries as a result of burns. That from May 13, 1946 to the date of his death on April 9, 1949 he was permanently disabled and unable to perform any kind of manual labor. That his death was accelerated by his long course of treatment and confinement involved with traumatic psy-

chosis. No other conclusion could be reasonably reached on the record, even though a great deal of testimony might be considered incompetent. However, no objections were made to this testimony, and the Court will not search the record to determine the competency or incompetency of such testimony under such a situation. In fact, such testimony without objections would have to be considered as competent testimony by the Court.

All of the testimony showed that Jesse J. Hedrick, the decedent, was in good health previous to the time he sustained his injuries.

In *Plano Foundry Co.* v. *Industrial Com.*, 356 Ill. 186 at 198 and 199 held:

"Proof of the state of the health of the employee prior to and down to the time of the injury, and the change immediately following the injury and continuing thereafter, is competent as tending to establish that the impaired condition was due to the injury."

The testimony at the hearing was transcribed by Bess H. Armstrong, who has submitted a statement for $58.10 for such services. This charge is reasonable.

All medical and hospital expenses have been paid by the State.

From all of the evidence in the record, the Court concludes that decedent, Jesse J. Hedrick, should have continued to receive compensation because of his total permanent disability. From undisputed testimony, the decedent was sent to various doctors by the State up to March 25, 1948, and without question the decedent was afflicted with traumatic psychosis. To deny an award under such circumstances, in the opinion of this Court, would be a travesty on justice. To say that the State concluded the man was mentally afflicted, and then to deny an award because of decedent's failure to file a claim for an award to which he was justly entitled, would

thwart the ends of justice and the liberal interpretation of the Compensation Act. It is as much the duty of the State, in such circumstances, to see that the decedent's interests were protected, as it was for the claimant himself.

From all the evidence in the record, the Court concludes that the claimant is entitled to an award. An award is, therefore, entered in favor of Etna Hedrick in the amount of $4,800.00. Jesse J. Hedrick, in his lifetime, had received payments in the amount of $1,235.41, which sum shall, for the reasons announced, be deducted from the total award herein granted. The balance of $3,564.59 shall be paid at the rate of $18.00 a week commencing on April 10, 1948, of which 131 weeks have accrued to October 14, 1950, or a total of $2,358.00, less payment of $1,235.41 made to Jesse J. Hedrick, or the sum of $1,122.59, which has accrued and is payable forthwith. The balance of $2,442.00 is to be paid at the rate of $18.00 per week for a period of 135 weeks commencing on October 21, 1950, with one final payment of $12.00.

An award in the amount of $58.10 for stenographic services is entered in favor of Bess H. Armstrong.

Future payments of compensation being subject to the Workmen's Compensation Act of Illinois, the jurisdiction of this cause is specifically reserved for the entry of such other orders as from time to time may be necessary.

This award is subject to the approval of the Governor, as provided in Section 3 of ''An Act concerning the payment of compensation awards to State employees.''