(No. 40146.—■■■■■■■■■)

UNION STARCH & REFINING COMPANY, Appellant, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(JOHN MARSHALL, Appellee.)

*Opinion filed March 29, 1967.*

PRICE, NOETZEL, SCHLAGER & BURGESON, of Chicago, (JOHN E. CUNNINGHAM, of counsel,) for appellant.

BEATTY, SCHOOLEY & THEIS, of Granite City, (WILLIAM W. SCHOOLEY, of counsel,) for appellee.

Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion of the court:

The employer, Union Starch & Refining Company, appeals from a judgment of the circuit court of Madison County affirming the Industrial Commission's confirmation of an arbitrator's award of compensation to its employee, John Marshall. On April 28, 1965, the arbitrator awarded compensation to the employee for $70\frac{5}{7}$ weeks temporary total disability because of injuries sustained which caused a temporary disabling, but not yet permanent, condition.

It is the contention of the employer that there is a total absence of any medical evidence of objective conditions or symptoms; that no causal relationship was proven between the accident of October 16, 1963, and the removal of a ruptured disc on February 9, 1965; and that the evidence negates the existence of a disabling condition and incapacity to work.

On October 16, 1963, John Marshall was employed by the respondent as a material handler. This job required that he and a fellow worker lift 100-pound sacks of flour as they came from a chute and throw them onto a stack. On that day Marshall and two other employees, in the presence of their foreman, were moving a piece of machinery weighing approximately 500 pounds by sliding and lifting it across a concrete floor. Marshall was in front of the machinery, lifting and pulling backwards by means of a rope around his shoulders which was attached to two bolts at the bottom of the machinery. The other two men were in the rear pushing. While engaged in moving the machinery Marshall

slipped and felt a pain in his back which became more severe when he tried to straighten up. He complained of this pain to the other two workers and to the foreman, who sent him to the dispensary for treatment. The dispensary sent him to Dr. W. W. Bowers, who gave him diathermy treatment and pain pills and Marshall went home. The next day he attempted to do his regular work but notified the foreman that he had pain, so he was given a job as clean-up man, but after 3½ hours he went home. The next day he worked for about 1½ hours and saw Dr. Bowers again. After prescribing diathermy and pain pills, Dr. Bowers referred him to Drs. Scheer and Hertel in St. Louis, Missouri. Dr. Hertel recommended that he wear a girdle and stay at home.

In December, 1963, Dr. Hertel sent him to St. John's Mercy Hospital where he was in traction for a period of eleven days. It appears that Dr. Hertel treated him through April, 1964, and told him during the months of April, May and June that he could go back to work if he could perform the duties. He did not work from July, 1964, until the date of the hearing before the arbitrator on April 14, 1965.

The traction and pain pills did not relieve the pain in his back and legs and Marshall therefore consulted Dr. Bart Cole in Belleville in July, 1964, and at that time a myelogram was recommended. Soon after that the employee's attorney sent a letter to the employer demanding further medical treatment by a physician of employer's choice, and again on August 25, 1964, the employee's attorney sent a similar letter containing a request for a laminectomy. Pursuant to these letters the employer sent Marshall to Dr. Scheer for further examination and, although no further treatment was offered, Dr. Scheer stated in his report that there were no significant changes in Marshall's symptoms since he last examined him on April 27, 1964. This report noted that the employee had a tenderness in the upper dorsal area and in the lumbosacral area, that a straight leg raising test on the left and the Lasque test on the left produced pain

in the back. The doctor's conclusion at that time was that the employee had a chronic back sprain with over-exaggeration of symptoms.

The employee stated that he did not work subsequent to October 19, 1963, because he "just couldn't make it," and he "may have tried to work in June of 1964." In any event he did not work at all between July, 1964 and February, 1965. He testified that he had had much pain in June of 1964 with no improvement at all and that this condition has not changed. He also testified that he had no further injuries from October 16, 1963, until the time of the laminectomy on February 9, 1965.

The employee had entered St. Elizabeth's Hospital on February 2, 1965, under the care of Dr. Cole for a myelogram which showed a defect in the opaque media at the level of L4-L5 representing a herniated nucleus pulposis in this area. On February 4 the employee's attorney notified the employer of the results of the myelogram and demanded further medical treatment and a laminectomy. Thereafter Dr. Cole performed the operation on February 9 and removed the herniated disc at level L4-L5. Dr. Cole's examination upon the employee's admission to the hospital revealed spasm in the lumbosacral area of his back and a positive straight leg raising test. These were similar to the findings reported by Dr. Scheer in his report of September 15, 1964. At the date of the hearing, which was two months after surgery, the employee testified that he still had quite a bit of pain, but it was not continuous and he did not have to take as many pain capsules.

All of the testimony in the record as to the accident and the resulting immediate pain comes from the employee and two fellow employees and is uncontradicted. The employee in his testimony described the treatment he received from the various doctors and what they told him. Also in the record is Dr. Scheer's report of his examination on September 15 and the records from St. Elizabeth's hospital,

In its petition to review the decision of the arbitrator the employer stated that it would offer additional medical evidence to the commission, but no such evidence was offered. Employer's argument that there is no evidence of objective conditions or symptoms relating to the employee's injury is not supported by the record. The hospital records and notations contained therein reveal objective symptoms and findings such as spasm in the lumbosacral area when the employee was admitted to the hospital, a positive straight leg raising test, the report of the myelogram showing a constant defect in the opaque media at the level of L4-L5 on the left, and the operative record which showed a ruptured disc at that level. The report of the company's Dr. Scheer, which is also in evidence, reveals objective symptoms and conditions.

As to the claim of the employer that no causal relationship is shown between the accident of October, 1963, and the removal of the ruptured disc by Dr. Cole on February 9, 1965, the finding of the commission that there was a causal relationship is not against the manifest weight of the evidence. A chain of events is revealed by the testimony which shows a prior state of good health, an accident resulting in disability, and finally the removal of a ruptured disc, together with the other circumstantial evidence which establishes a causal relationship between the accident and employee's condition at the date of the hearing.

In *Plano Foundry Co. v. Industrial Com.* 356 Ill. 186, the court stated: "Proof of the state of the health of the employee prior to and down to the time of the injury, and the change immediately following the injury and continuing thereafter, is competent as tending to establish that the impaired condition was due to the injury. (*American Liability Ins. Co. v. Industrial Com. supra.*) Where an injury has a characteristic result the result is an objective symptom."

We have such a characteristic result here and the com-

mission by its training and experience was entitled to draw, as a reasonable inference, the conclusion that the pain of which the employee complained was caused by the pressure of the ruptured disc. The finding of the commission is supported by the admission note made by Dr. Cole in the hospital records which was essentially consistent with the report of Dr. Scheer, the company doctor, on September 15, 1964. These notations and reports support a conclusion that the herniated disc had been present for a long time prior to February 9, 1965. It is to be noted that the commission's conclusion is not that the employee was at the time of the hearing permanently disabled, but was temporarily totally disabled from pursuing his usual occupation.

The employer places much emphasis on the absence of medical testimony indicating either causation or disability, and relies primarily on *A. O. Smith Corp.* v. *Industrial Com.* 33 Ill.2d 510. We know of no case requiring a doctor's testimony to establish causation and the extent of disability, especially where, as here, the record contains the company doctor's report and hospital records showing findings of the employee's personal physician which are consistent with the employee's testimony.

In *A. O. Smith Corp.* there was direct medical testimony that the employee's state of ill-being was a result of a nontraumatic degenerative process evidenced by a long history of back pain and the employee's testimony relating to causation was unsupported by medical evidence. Our determination that the inferences drawn by the commission in the *A. O. Smith Corp.* case were unreasonable is not controlling in the present case where employee had a good 'health record and a record of heavy manual labor followed by an accident and a herniated disc without an intervening injury.

Finally, we agree with the employer that for an award for temporary total disability the evidence must show not only a failure to work, but an inability to work. (*Crerar*

*Clinch Coal Co.* v. *Industrial Com.* 3 Ill.2d 88.) However, upon a review of all the evidence, we cannot say that the commission's determination of the extent of the employee's diability is based upon an unreasonable inference or imagination or conjecture.

Since the determination of the commission was not contrary to the manifest weight of the evidence, the judgment of the circuit court is affirmed.

*Judgment affirmed.*