(No. 54505.— )

JOYCE A. ELLIOTT, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Caterpillar Tractor Company, Appellee).

*Opinion filed March 16, 1982.—Rehearing denied May 27, 1982.*

Elmo E. Koos, of Peoria, for appellant.

Forrest D. Serblin, of Peoria, for appellee.

CHIEF JUSTICE RYAN delivered the opinion of the court:

Claimant, Joyce A. Elliott, was injured on February 13, 1976, while employed by Caterpillar Tractor Company. The arbitrator gave her an award under the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.1 *et seq.*) of 31 weeks of compensation for temporary total disability and 58 3/4 weeks of compensation for 25% loss of use of the right arm. The Industrial Commission, after hearing additional evidence, affirmed the arbitrator's award. The circuit court of Peoria County confirmed the decision of the Industrial Commission. The claimant has appealed directly to this court (73 Ill. 2d R. 302(a)), contending that the decision of the Industrial Commission is against the manifest weight of the evidence. She argues that she was permanently and totally disabled by her injury.

On February 13, 1976, claimant, while working at Caterpillar Tractor Company's East Peoria plant, was

struck on the right side of her back between the spine and the shoulder blade by a metal object referred to as a pry bar. At the hearing before the arbitrator, the claimant testified that she immediately felt pain and went to the company's first-aid station. She was given medication and sent back to a "one-handed job" with her right arm in a sling. She continued to report for work each day and for a period of time was given first-aid treatment at the plant. She worked at various jobs, including the "burr bench" and sweeping. She was examined by the company doctor, Dr. Matthew Neu, in February 1976, and again in June 1976. Her principal complaint to the doctor on both examinations was pain over the right shoulder blade and in the back on the right side. Dr. Neu placed her on a temporary lifting restriction of 25 pounds. His notes reflect that claimant had no pain in her cervical spine until August of 1976 and made no mention of lumbosacral back pain until May 1977. She was examined by Dr. Edward Smith in August 1976, who found no orthopedic problem and told claimant that she had a muscle injury from the trauma she had sustained in February. In August 1976 the claimant was examined by Dr. Lawrence Holden, a neurosurgeon. His report to claimant's attorney stated that her complaints included "tingling in the right arm" in addition to the complaints of pain noted above. She ceased working on December 1, 1976, and in January 1977 she was admitted to the hospital for a brief period at the direction of Dr. Holden for conservative treatment. The company records under the date of January 14, 1977, contain a note under the name of A. N. Ward, M.D., which states, "It is my opinion that there is no relationship to her present symptoms and the injury of 2-13-76." She continued to remain off work and under the care of Dr. Holden.

In May 1977 at the company's direction, claimant was examined by Dr. Hugh Cooper, an orthopedic specialist, and by Dr. Floyd Barringer, a neurosurgeon. The company

records reflect that Dr. Cooper was unable to find evidence, on physical examination or X ray, to suggest that significant pathology existed in claimant's neck or back, and that his findings suggest a chronic functional problem, perhaps with a mild residual ligamentous strain.

Dr. Barringer reported that he found no objective evidence of neurologic injury or disease. He also stated that the claimant demonstrated diminished contraction of the muscles of the upper right extremity with alleged slight dimunition of sensation over the right upper extremity "not fitting to any nerve root distribution." He concluded, "[A]t the present time, I see no evidence of neurologic disease here." Following his examination of X rays, which were taken at his direction, he further reported that the X rays were completely normal in every respect and that there was "certainly no evidence of a ruptured disc." Dr. Barringer's report was dated June 22, 1977.

Dr. Neu, the company doctor, testified that on July 13, 1977, he contacted Dr. Holden and told him that he had placed a weight restriction of 25 pounds on claimant's work and that a job was available within this restriction. He testified that Dr. Holden stated that he felt the claimant could work within that restriction. Dr. Neu further testified that he examined the claimant on July 15, 1977, and that he told her of his conversation with Dr. Holden and told her to return to work. He stated that he again talked with Dr. Holden on August 12, 1977, and told him that the claimant had returned to work but only worked for about five minutes. He said that he told Dr. Holden that, as long as the work did not involve handling pieces that weighed over 25 pounds, he felt the claimant could perform the job. He stated that Dr. Holden agreed. Dr. Neu saw claimant on August 16. He again told her of his conversation with Dr. Holden. He also examined her on that date and told her to return to work on August 17.

In the company records under the date of August 17, 1977, Dr. Neu, after reviewing claimant's history and the results of his latest examination, stated that she "is clearly malingering and magnifying any problems which she has."

The claimant testified that when she went back to work on July 15, 1977, she was assigned to work on the burr bench. She stated that after she worked for an hour or an hour and a half, she had a lot of pain in her back, her neck and her right arm. She went to first aid and then went home. When she reported to work on August 17, 1977, as directed by Dr. Neu, she was again assigned to the burr bench. She told her foreman she could not work on the burr bench and she asked for a sweeper's job, but was told none was available. She again went home. She later told Dr. Holden that she had been assigned to the burr bench, and she said that he told her she should not do that kind of work and suggested a sweeping job.

Dr. Holden's reports were presented to the arbitrator. His report of August 24, 1977, stated that the claimant had attempted to return to work on July 15, 1977. However, instead of light-duty work, she had been assigned to work on a burr bench. After a trial period, her symptoms had worsened and she was forced to return home. He advised her not to return to this job if she could not tolerate it.

Dewey Pitman, testifying before the arbitrator, said that on August 17, 1977, he was a supervisor at the Caterpillar Tractor Company's plant. On that date he had been informed by the medical department that claimant was returning to work and of the restriction on weight lifting. When she reported, he told her she would be working on the burr bench. She told him she had been on that job before and could not do it and that her doctor had told her she was not to attempt to do that work. He stated he then offered her a sweeping job and she responded that there was no sense in going through the hassle of sweep-

ing floors. She was going home and intended to contact her doctor. Her employment was terminated following this episode. However, as a result of a grievance proceeding, she was later reinstated.

The hearing before the arbitrator was on December 9, 1977. On review before the Industrial Commission, the claimant and Dr. Holden testified on behalf of the claimant. Dr. Neu and Basil Lee, a foreman, testified for the employer. Also, an evidence deposition of Dr. Ernest Adams was introduced into evidence by the employer.

Claimant testified that after her reinstatement she returned to the plant in February 1978 and talked to a foreman "to review a job." She said the foreman told her that a job was available at the burr bench. She told him she did not desire that job. She said it was suggested by the foreman that she should quit, "that if I couldn't do the job, that I should turn in my badge." She stated she did not think she had quit.

Basil Lee testified for the employer. In February 1978 he was a foreman. When the claimant reported for work in February 1978, her foreman had assigned her a job which she refused. Her foreman then sent her to see Lee. He asked her why she wanted to quit, and she told him she did not think they had a job she could do. Lee then told her he would get the necessary papers and she could process them and quit. When he asked her if she had another job, she said "No," she had twins. She felt she needed to spend some time with them. "I think I need to go home and get my act together." Claimant denied that she had made that statement.

Dr. Holden testified that after the hearing before the arbitrator he again saw claimant, who continued to have pain. However, claimant failed to keep several appointments with him. He next saw her in May 1978, at which time she complained of pain in the neck, extending down her right arm. He saw her again in June 1978, at which

time she had the same complaints. In October 1978 she again came to his office complaining of the pain and wanted it corrected surgically. He hospitalized her and on October 10, 1978, performed a surgical laminectomy in the cervical area, at which time a compression of the eighth cervical nerve root was demonstrated. He last saw her in September 1979, at which time she was continuing to have pain between the shoulder blades but had no pain in her right arm. He gave his opinion that her condition is causally connected to her injury in February 1976, that the condition is permanent, and that she is not able to return to work on the burr bench. He did not express an opinion as to her permanent total disability.

The evidence deposition of Dr. Ernest Adams, introduced by the employer at the hearing before the Commission, discloses that Dr. Adams specializes in physical medicine and rehabilitation, which he stated is the science of "treatment and diagnosis of neuromuscular and body diseases." In preparation for the specialty, he stated that he had training in neurology and orthopedics. He examined claimant in July 1979 and described his examination and his findings. She stated her complaints to him as pain in the right side of her neck across the right shoulder into the right shoulder blade and numbness in her fingers. Dr. Adams stated he found no evidence in his examination to confirm her subjective complaints. Her complaints to Dr. Adams following her laminectomy included the numbness in her fingers, which Dr. Holden stated she did not have when he examined her in September 1979.

Claimant relies on *Hook v. Industrial Com.* (1972), 53 Ill. 2d 245, in urging that Dr. Holden's testimony should prevail. Claimant contends that he was the neurosurgeon who actually treated her and performed the surgery and was therefore in a better position to know her physical condition than were the examining physicians. In *Hook* this court held that there was no conflict in the

medical testimony for the Industrial Commission to resolve. The employer's medical witness had testified that his opinion of no disability was based on his findings following an orthopedic examination and that he had made no psychiatric examination. The claimant's doctor was a physician specializing in neurological and psychiatric disorders. His diagnosis was that the employee was suffering from severe trauma neurosis. The court held that this testimony was unrebutted in the record.

In our case Dr. Holden's testimony as a neurosurgeon does not stand unrebutted. Dr. Barringer, whose report was introduced by the employer, had training in the same specialty as did Dr. Holden. Also, Dr. Adams, although having a different specialty than Dr. Holden, nevertheless had training in neurology and orthopedics. Dr. Cooper, an orthopedic surgeon, likewise was competent to express a medical opinion in the area of claimant's complaints. Disregarding completely the testimony of Dr. Neu, Dr. Holden's testimony did not stand unrebutted. The fact that he may have been the actual treating physician and the surgeon who performed the laminectomy goes only to the credibility of his testimony and the weight to be given to it and does not require, as a matter of law, that it should prevail over the opinions expressed by other examining physicians. This court's holding in *Hook* is not applicable under the facts of the case now before us.

There is no reason why the general and often expressed rule concerning the manifest weight of the evidence should not govern our holding in this case. Resolving conflicts in the evidence, drawing inferences from the testimony, and determining the credibility of witnesses and the weight to be given to their testimony are matters within the province of the Industrial Commission, and this court will not disturb the Commission's finding unless it is against the manifest weight of the evidence. (*Long v. Industrual Com.* (1979), 76 Ill. 2d 561, 565; *Moore v. Industrial*

*Com.* (1975), 60 Ill. 2d 197, 203.) The above review of the evidence presented in this case discloses that there existed a substantial conflict between the opinions expressed by the doctors testifying for the employer and the opinion expressed by Dr. Holden. It was for the Industrial Commission to evaluate and to give credence to this evidence. We cannot substitute our judgment for that of the Industrial Commission in deciding which evidence to believe and which evidence to reject, or the weight to be given to the testimony of various witnesses in this case. We cannot say that the decision of the Industrial Commission, which affirmed the findings of the arbitrator, is contrary to the manifest weight of the evidence.

The judgment of the circuit court of Peoria County is affirmed.

*Judgment affirmed.*