(No. 55712.-

SPECTOR FREIGHT SYSTEM, INC., Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Henry Costello, Appellee).

*Opinion filed January 24, 1983.*

James W. Tallant & Associates, Ltd., of Chicago (James W. Tallant and Michael B. Gunzburg, of counsel), for appellant.

Gregory E. Rogus, of Brundage and Garr, Ltd., of Chicago, for appellee.

CHIEF JUSTICE RYAN delivered the opinion of the court:

Henry Costello, claimant, was awarded compensation by an arbitrator pursuant to section 19(b) of the Workmen's Compensation Act (Ill. Rev. Stat. 1979, ch. 48, par. .138.19(b)). Upon review, the Industrial Commission

affirmed the award of compensation, and on *certiorari* the circuit court of Cook County confirmed the decision of the Commission. This is a direct appeal to this court pursuant to Rule 302(a). (87 Ill. 2d R. 302(a).) For the reasons set forth below, we affirm the decision of the circuit court.

Henry Costello was employed as a truck driver for Spector Freight System, Inc. Costello testified that he was "in good shape" when he reported for work on the morning of October 9, 1979. After returning from lunch, Costello stated he slipped and fell while climbing into the tractor of his tractor-trailer truck. The tractor was equipped with a saddle tank, which is located under the driver's door. The tank is three to four feet long, running the length of the door, is round and bulges out from under the edge of the door. The floor of the tractor is approximately four feet off the ground. A small step is built into the saddle tank to facilitate climbing into the cab of the tractor. Costello slipped off of this step while climbing into the cab. He testified that when he slipped, "I hit the tank, slipped off the tank, my knee hit the saddle tank, the rest of the body just jerked."

The terminal manager for the employer, Michael Bruns, testified that Costello customarily called in at 10 a.m., 12 noon, 2 p.m., and 4 p.m. Bruns claims he did not take the 12 noon telephone call, but that Costello did report his injury to a salesman who took the call. Costello testified that he spoke to Bruns sometime that afternoon. Bruns testified that he spoke to Costello at 2 p.m. and 4 p.m., but that neither of them mentioned the injury. When Costello finished his shift at 6 p.m., he reported to Bruns that he had injured his knee and, while filling out an accident report, stated his back was injured as well.

Costello saw Dr. James B. Boscardin the next day. He underwent treatment and returned to work on Novem-

ber 12, 1979. Costello worked until February 14, 1980, at which time he underwent further therapy and was ultimately hospitalized for further treatment and testing. Costello returned to work on July 28, 1980. Other facts necessary to the resolution of this matter will be set forth with the discussion of the issues involved.

Spector first asserts that Costello made a belated claim that the injury had caused the back injury, and that the belatedness of the claim shows a lack of causal connection between the injury and Costello's condition of ill-being. We disagree. A slight delay in reporting an accident does not necessarily mean that the injury did not take place. (*Eagle Sheet Metal Co. v. Industrial Com.* (1980), 81 Ill. 2d 31, 36.) Furthermore, Costello did report his accident to a salesman and did tell Bruns of his back injury while filling out the accident report the evening of the day of the injury.

Spector asserts that the finding of a compensable injury is against the manifest weight of the evidence, and that there is no causal connection between Costello's condition of ill-being and his accident. Spector relies heavily on *A. O. Smith Corp. v. Industrial Com.* (1965), 33 Ill. 2d 510, to support its contention that there is no causal connection between Costello's condition of ill-being and his accident. *A. O. Smith* is factually distinguishable from the case at bar. In *A. O. Smith*, the claimant's "body was subjected to a sudden jerk" (33 Ill. 2d 510, 511), as here, and claimant experienced pain in his back and leg and was subsequently examined by the company doctor. The doctor testified that the condition causing claimant's pain and discomfort had developed over a period of six to 12 months and although the accident could have caused claimant to experience pain, neither a new injury nor aggravation of an old injury occurred.

The facts in the instant matter do not belie the finding of a causal connection. Costello testified that he hit

his knee *and* jerked his body. Although Dr. Boscardin treated Costello in 1976 for a degenerative disc disease, and again in 1977 for a knee problem, he did not see Costello from the end of 1977 until October of 1979, when he slipped climbing into his truck. The doctor testified that he did not see Costello during this two-year period because "he was doing well," which supports Costello's claim that he was "in good shape" prior to the accident.

When Dr. Boscardin examined Costello on October 10, 1979, he found evidence of some contusion and tenderness around the right knee, as well as the fact that "[t]he patient had marked perispinal spasms in his back, decreased range of motion, very great difficulty in moving." The doctor stated that these spasms could not be faked. At that time he advised Costello not to return to work.

Costello was reexamined by Dr. Boscardin the following Monday. He found that the knee was better but that the back problem persisted. At this time the doctor ordered an epidural injection of steroids to the spine. Dr. Boscardin testified that Costello was not able to perform the duties of a truck driver at that time. Costello did not respond to treatment or the use of a back brace and was eventually hospitalized by Dr. Boscardin for a myelogram and further treatment.

Spector places heavy emphasis on Dr. Boscardin's reply to a question on cross-examination. When asked if the impact to the knee could cause the back injury he answered, "No." Spector focuses on the bumped knee as the only injury Costello suffered when he fell. Although Dr. Boscardin testified that a bump on the knee could not account for the back symptomatology outlined above, there is evidence that Costello experienced more than a mere bump on the knee. Costello testified that his knee hit the tank and his body jerked as a result. It would

seem that Spector chooses to ignore this fact and instead concentrate only on facts favorable to its position.

Costello relies on *Union Starch & Refining Co. v. Industrial Com.* (1967), 37 Ill. 2d 139, in which this court found a causal connection between the accident and claimant's condition even though there was no medical testimony. The facts in that case are similar to those before us. The court stated:

"[T]he finding of the commission that there was a causal relationship is not against the manifest weight of the evidence. A chain of events is revealed by the testimony which shows a prior state of good health, an accident resulting in disability, and finally the removal of a ruptured disc, together with the other circumstantial evidence which establishes a causal relationship between the accident and employee's condition at the date of the hearing." *Union Starch & Refining Co. v. Industrial Com.* (1967), 37 Ill. 2d 139, 143.

The court in *Union Starch*, quoting from *Plano Foundry Co. v. Industrial Com.* (1934), 356 Ill. 186, stated: " 'Proof of the state of the health of the employee prior to and down to the time of the injury, and the change immediately following the injury and continuing thereafter, is competent as tending to establish that the impaired condition was due to the injury. [Citation.] Where an injury has a characteristic result the result is an objective symptom.' " *Union Starch & Refining Co. v. Industrial Com.* (1967), 37 Ill. 2d 139, 143.

Although Spector claims that proof of causal connection is based wholly on Costello's testimony, this is not true. The testimony of claimant is supported by the findings of Dr. Boscardin, who examined claimant following the accident. He found that claimant had perispinal spasms in his back, decreased range of motion, and very great difficulty in moving. The doctor's findings and treatment the Monday following the accident also support claimant's testimony concerning an injury to his back.

Dr. Boscardin's testimony also established that the

claimant had not experienced back problems for two years prior to the accident. Claimant's testimony that he was feeling well before the accident, coupled with the testimony concerning claimant's treatment and condition following the accident, constitutes objective evidence of claimant's impaired condition and its causal connection with the accident of October 9, 1979.

At the hearing before the arbitrator, Spector presented the testimony of two physicians who had examined Costello pursuant to its request. Although the testimony of these physicians conflicts with that of Dr. Boscardin, the resolution of conflicting views of medical experts is within the realm of the Industrial Commission, and that resolution will not be disturbed by this court unless contrary to the manifest weight of the evidence. *International Harvester v. Industrial Com.* (1982), 93 Ill. 2d 59; *Frankie Childress v. Industrial Com.* (1982), 93 Ill. 2d 144; *McIntire v. Industrial Com.* (1971), 49 Ill. 2d 239, 242; *Proctor Community Hospital v. Industrial Com.* (1969), 41 Ill. 2d 537, 541.

It is axiomatic that this court, upon review of a workmen's compensation case, is limited to the determination of whether the findings of the Industrial Commission are against the manifest weight of the evidence, and that the Commission's prime function is to resolve disputed questions of fact and conflicts in the evidence and that these findings must be upheld unless against the manifest weight of the evidence. (*Ragler Motor Sales v. Industrial Com.* (1982), 93 Ill. 2d 66; *Elliott v. Industrial Com.* (1982), 91 Ill. 2d 100; *Hart Carter Co. v. Industrial Com.* (1982), 89 Ill. 2d 487; *Eagle Sheet Metal Co. v. Industrial Com.* (1980), 81 Ill. 2d 31; *Gladstone v. Industrial Com.* (1980), 79 Ill. 2d 236; *Scott v. Industrial Com.* (1979), 76 Ill. 2d 183; *Proctor Community Hospital v. Industrial Com.* (1969), 41 Ill. 2d 537.) An examination of the record reveals that the findings of the Industrial Commission are

not contrary to the manifest weight of the evidence. This court will not set aside a decision of the Industrial Commission merely because it might have made a different finding or drawn a different inference than that drawn by the Commission. *Hart Carter Co. v. Industrial Com.* (1982), 89 Ill. 2d 487, 495.

Spector also asserts that it was unreasonable for the Industrial Commission to infer that Costello's testimony was credible. It bases this assertion on the fact that Costello has filed many compensation claims against Spector, has had many recoveries, and when examined at the hearing was only able to remember some of the previous claims. Costello did in fact admit that he had prior accidents, claims and recoveries and prior back problems. Spector sets forth the following list in its brief and claims that Costello did not remember the following recoveries: (1) 9/29/65—Recovery for 2% of right arm; (2) 12/20/75—Recovery for 2% of right arm; (3) 10/13/66—Recovery for 5% of left leg; (4) 12/13/67—Recovery for 5% of left leg; (5) 10/18/68—Recovery for 5% of right leg; (6) 10/19/71—Recovery for 5% of left leg; (7) 1/17/74—Recovery for 4% of right leg; (8) 9/18/78—Recovery for 5% of left arm; (9) 11/3/78—Recovery for 5% of left arm. Spector lists the following as compensation recoveries Costello did remember: (10) 1/25/71—Recovery for 7½% of left leg; (11) 12/6/76—Recovery for 2½% of right leg and 2½% of left leg; (12) 3/31/77—Recovery for 25% of right leg. Including the present claim, it appears that the claimant has had 13 workmen's compensation claims in which there were recoveries between 1965 and 1980. This certainly justifies Spector's concern as to the validity of the present claim. One would think that this number of claims, most of which were minor in nature, would alert the Industrial Commission to strictly scrutinize claimant's evidence. It would, of course, be unfair to rule out recovery simply because of many previous claims. It may be that the present claim is valid and one or more

of the previous ones spurious. We trust that the Industrial Commission was aware of claimant's litigation record when it determined his credibility as a witness. It is, of course, within the province of the Commission to make this determination.

For the reasons stated above, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*