CHICAGO HOUSING AUTHORITY, Appellant, v. THE INDUSTRIAL
COMMISSION *et al.* (Henry Swierenga, Appellee).

First District (Industrial Commission Division)   No. 1—91—3917WC

Opinion filed January 15, 1993.

Roddy, Power, Leahy, Guill, Zima & Gifford, Ltd., of Chicago (John H. Guill, of counsel), for appellant.

Koutsky, Boudreau, Lassen & Mason, of Chicago (Brian D. Lassen, of counsel), for appellee.

JUSTICE WOODWARD delivered the opinion of the court:
Claimant, Henry Swierenga, filed an application for adjustment of claim pursuant to the Workers' Compensation Act (Act) (Ill. Rev.

Stat. 1981, ch. 48, par. 138.1 *et seq.*). Therein he alleged a head injury which arose out of and in the course of his employment with the employer, Chicago Housing Authority. After a hearing conducted on July 18, 1988, the arbitrator found that claimant had sustained a 45.5% loss of hearing in his right ear, a 15.1% loss of hearing in his left ear, a 15% loss of use of his right thumb and two weeks' disfigurement to his forehead over his right eyebrow. On November 30, 1990, the Industrial Commission (Commission) affirmed and adopted the arbitrator's decision. On November 22, 1991, the circuit court of Cook County confirmed the Commission's decision. This timely appeal followed.

On appeal, the employer raises two issues, namely: (1) that the Commission erred in finding that claimant's injury arose out of and in the course of his employment; and (2) the Commission erred in finding that claimant had established a causal connection between his injuries and his employment.

Claimant testified that on October 7, 1981, he was working as a carpenter for the employer at Altgeld Gardens, a public housing project. He had been employed as a carpenter by the employer since 1975. He was repairing windows and doors in various apartments. At approximately 12:50 p.m., claimant walked toward his vehicle, which was parked in a lot adjacent to Altgeld Gardens, in order to get more tools. Whereupon, "some young fellows behind the vehicle" struck claimant behind the head, causing him to lose consciousness. He regained consciousness in the Altgeld Gardens supervisor's office. In the incident, claimant received cuts over the right eyebrow and at the base of his right thumb. Claimant was not robbed of any possessions.

On the same day, claimant was taken to St. Francis Hospital emergency room, where he received treatment. Over the next several weeks, he attended respondent's company clinic, the Clearing Industrial Clinic, on four occasions. Claimant returned to work on October 26, 1981.

Claimant testified that he began to experience hearing difficulties early in 1982. His family physician, Dr. Young, referred him to an eye, ear, nose and throat specialist, Dr. Pradeep Keni, in June 1982. Finding that claimant had a substantial hearing loss, Dr. Keni prescribed a hearing aid for his right ear. At respondent's request, claimant was examined by Dr. Irwin Horowitz, an eye, ear, nose and throat specialist, on May 10, 1983. In a letter to respondent's counsel, Dr. Horowitz stated that claimant had experienced a bilateral sensorineural hearing loss in the amount of 45.5% in his right ear and 15.1% in his left ear. Without an audiogram showing claimant's hearing before the incident,

Dr. Horowitz could not state if the subject trauma caused the hearing loss. He opined that several other factors could have contributed to claimant's hearing loss, namely, his infantry service in World War II, his work with power tools as a carpenter and the effects of aging.

At his attorney's request, claimant was examined by Dr. Hirshfield on March 8, 1984. Dr. Hirshfield found hearing loss in claimant's right ear, impaired mobility of his right thumb and a scar above his right eyebrow. Dr. Hirshfield did not give an opinion as to the cause of claimant's hearing loss.

Claimant stated that as of the arbitration hearing his "hearing is gone" and that he had never sought treatment for a hearing problem before the subject incident. Claimant also testified that since the subject injury he had experienced problems with dizziness, for which he was taking prescribed medication.

Respondent initially argues that the Commission's decision that the subject injuries arose out of and in the course of his employment was against the manifest weight of the evidence. Respondent argues that claimant's testimony is not adequate to demonstrate whether the alleged attack took place in an area which presented a greater risk of criminal assault than that to which the general public is exposed. Respondent relies on *Greene v. Industrial Comm'n* (1981), 87 Ill. 2d 1, and *Associated Vendors, Inc. v. Industrial Comm'n* (1970), 45 Ill. 2d 203, to support his argument. In response, claimant argues that the Commission's decision regarding this issue is not undercut by *Greene* and *Associated Vendors*. We agree.

■ "Arising out of" employment, within the meaning of the relevant statute, refers to causal connection between employment and the injury. Causal connection is demonstrated if claimant establishes that the injury's origin lies in some risk related to employment. (*Brady v. Louis Ruffolo & Sons Construction Co.* (1991), 143 Ill. 2d 542.) Resolving disputes in evidence and drawing reasonable inferences and conclusions therefrom are the Commission's responsibility, and its findings will not be reversed on appeal unless they are against the manifest weight of the evidence. *Riley v. Industrial Comm'n* (1991), 212 Ill. App. 3d 62.

In *Associated Vendors*, the claimant and his wife owned all shares of the respondent corporation, which was engaged in the installation of vending machines. On January 16, 1966, claimant received a request for the installation of a cigarette machine at 6201 South Cicero Avenue in Chicago. Upon arriving at the address at 1:30 p.m., claimant was assaulted and robbed by unknown assailants. He received serious injuries which required extensive medical treatment. The *Associ-*

*ated Vendors* court, taking notice of a report on Chicago crime in 1968, noted that the subject industry had been plagued by robberies and beatings for numerous years. The court, finding that it was reasonable for the Commission to assume that the nature of claimant's employment would expose him to the hazards of robbery *or* beating, held that his injuries arose out of his work.

In the appeal at bar, claimant was working as a carpenter for respondent. At approximately 12:50 p.m. on the date of the subject incident, claimant, while on his way to pick up some tools from his vehicle located in the project's parking lot, was assaulted by unknown assailants. This testimony was unrebutted. As in *Associated Vendors*, the Commission considered all the facts, drew rational inferences and conclusions therefrom and determined that claimant's employment substantially increased his exposure to the hazards of beating *or* robbery.

In *Greene v. Industrial Comm'n* (1981), 87 Ill. 2d 1, an unknown assailant stabbed and murdered James Greene, a service technician for Orkin Exterminating, Inc. At about 7:30 a.m. on March 3, 1978, Mr. Greene's body was found in the Orkin parking lot lying near his service vehicle, which was prepared for service. The engine was running, and the lights were on. The truck's interior had not been disturbed, and nothing appeared to be missing from Mr. Greene's person. The Orkin plant was located in an area of Aurora which contained residential, commercial and light industrial property. The court noted that in the year prior to Mr. Greene's murder, there had been some minor thefts in the Orkin parking lot. There was no record of attempted break-ins at the Orkin plant in the prior 10 years.

The Commission denied compensation to Mr. Greene's widow, finding that his death had not arisen out of his employment. Our supreme court, in upholding the Commission's decision, stated:

"Here the decedent's death is susceptible to the inference that it resulted from a purely personal risk, from a risk common to the public at large, or from a risk incidental to the decedent's employment." 87 Ill. 2d at 5.

The *Greene* court noted that the Orkin plant was untouched, decedent's personal belongings were intact and nothing was missing from the service vehicle. The court determined that the brutal murder was not necessary to effectuate a possible theft from the Orkin plant or Mr. Greene's person and, thus, upheld the Commission's finding that the injury did not arise of his employment.

■ Here, unlike *Greene*, the Commission found that claimant's injury resulted from a risk incidental to claimant's employment. In so

doing, the Commission rejected the idea that claimant's injury resulted from a purely personal risk or a risk common to the general public. The evidence before us supports its decision.

We find that the Commission's decision as to whether claimant's injury arose out of his employment is not against the manifest weight of the evidence.

Respondent's other argument is that the Commission erred in finding that claimant's condition of ill being is causally connected to his accident. Respondent downplays claimant's unrebutted testimony that he had no hearing problems prior to the assault, after which he experienced substantial hearing loss. Instead, the employer points to Dr. Horowitz's medical report, which indicated that several other factors could have contributed to the hearing loss suffered by claimant. Dr. Horowitz noted the possible effects of aging and the service in the infantry during World War II, and exposure to a "noise polluted" environment. Dr. Horowitz concluded that a causal connection between the trauma and hearing loss "can only be speculated upon." Respondent asserts that there is no physician's testimony supporting claimant's contention.

It is well established that the causal connection between an accident and a subsequent condition of ill being can be established without a physician's testimony. *Union Starch & Refining Co. v. Industrial Comm'n* (1967), 37 Ill. 2d 139.

■ In the appeal at bar, the claimant testified that prior to his work-related accident on October 7, 1981, he had no hearing problems and that he received no treatment for this condition. Subsequent to said injury, claimant experienced substantial problems regarding same. The record contains medical reports which substantiate claimant's testimony. The reasonable inference from these unrebutted facts is that claimant established a causal relationship between the injury and his condition of ill being. Moreover, Dr. Horowitz's ambiguous opinion as to causation is not dispositive of the issue. Accordingly, we find that the Commission's decision regarding this issue is not against the manifest weight of the evidence.

The judgment of the circuit court is affirmed.

Affirmed.

McCULLOUGH, P.J., and RAKOWSKI, STOUDER and RARICK, JJ., concur.